IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LORI D. SHENK,<br><br>                Plaintiff,<br><br>    vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security;<br><br>                Defendant. | 8:17CV279<br><br>**MEMORANDUM AND ORDER** |

      This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). The plaintiff, Lori D. Shenk, appeals the Commissioner's decision to deny her application for Social Security Disability ("Disability") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act and seeks review pursuant 42 U.S.C. §405(g), *see* Filing No. 16 (Plaintiff's Motion for an Order Reversing the Commissioner's Decision) and Filing No. 19 (Defendant's Motion for an Order Affirming the Commissioner's Decision). A transcript of the hearing held on February 8, 2016, is found in the record at Filing No. 12-2. Administrative Record ("Admin. R.") at 36-87. This Court has jurisdiction under 5 U.S.C. §§ 702 and 706 to review the final decision.

**Background**

      Shenk applied for disability benefits on April 21, 2014. She alleges disability due to fibromyalgia, migraines, degenerative disk disease, carpal tunnel, and temporomandibular joint dysfunction (TMJ). Shenk claims a disability onset date of March 31, 2014. On April 9, 2014, at the age of 48, she filed for disability and SSI. Initially, the Commissioner denied her claims on July 9, 2014, and again on August 27, 2014, upon reconsideration. She later

requested a hearing, held on February 8, 2016, with an Administrative Law Judge ("ALJ"). The Commissioner further denied benefits and held Shenk not disabled on March 11, 2016. Shenk seeks review of the ALJ's order denying disability benefits to claimant.

Shenk was born in 1965. She now has an associate degree, and a variety of work experience, including bookkeeper, cashier, office clerk, and title searcher. Filing No. 12-2, Admin. R. at 42-52. At a hearing on February 8, 2016, Shenk testified that she has difficulties standing, walking, and sitting for long periods of time, which led her to quit her most recent job as an online research specialist for American Title. *Id.* at 41-42. During the testimony she asked the ALJ if she could stand up and stood up several times. *Id.* at 50, 66. She stated that she held this position for about four years. *Id.* at 42. She stated that the last two years she had been working at home. *Id.* at 42-43. Shenk testified that she was unable to sit at a computer all day long because it led to migraines. *Id.* at 43. She also testified that she previously held a variety of other jobs entailing light or sedentary work requiring varying levels of skill. *Id.* at 48-51. She reported she could not do a job that required sitting on a computer for the majority of the day. *Id.* at 47-48. Claimant stated that she left early or was absent from her job once a week due to fatigue or pain, especially in the winter. *Id.* at 53-55. She testified that she would not be able to work full-time but could perform job functions that include making appointments via telephone, taking down names and addresses, and answering simple questions for a hypothetical company in Omaha. *Id.* at 66-67.

She testified that she currently does not write or use the computer for more than 15 minutes at a time, stand for more than 15 minutes at a time, or sit for more than 30 minutes at a time. *Id.* at 56-57. She stated that after sitting for 30 minutes she must alternate to standing for about five minutes. *Id.* at 68. She also stated that she does not get out of her

house for socializing often, but she did go out for her birthday in October 2015 and traveled to Florida in 2014 for a relative's funeral. *Id.* at 63.

Shenk then testified that she had sought treatment for her symptoms from her primary care physician. *Id.* at 58-59. She testified that her doctor told her conditions, "probably won't get any better." *Id.* at 60. She reported that her treating physician proscribed her Tramadol and Hydrocodone for pain and Xanax for anxiety. *Id.* at 64. She explained that the Hydrocodone and Xanax make her drowsy. *Id.* at 64. She testified that she drove 10 miles to the hearing but had to abstain from her pain medication, Hydrocodone and Xanax, that day in order to drive to the hearing. Consequently, she rarely drives. *Id.* at 64. She testified that she needs help in the grocery store because she has difficulty walking the aisles. *Id.* at 65. She testified that she had surgery on her right wrist to help with carpal tunnel syndrome. *Id.* at 68. She stated that despite the recent pain in her wrist, which limited her ability to work in her job at American Title, she did not seek treatment. *Id.* at 69.

Shenk's medical record reflects, among others, a diagnosis of fibromyalgia and lumbar disc disease. Her current physician has treated her since at least Mach 2013 for the associated pain and debilitation. *See* Filing No. 12-7,8 at 309-325, 345-383, 396-400. She sees her treating physician as a follow-up for her fibromyalgia and lumbar condition nearly every month, and on occasion twice a month. For example, in 2015 she had 15 visits to her treating physician. In nearly every visit the diagnosis of fibromyalgia and lumbar disc disease is noted, and her status is updated. Bending, lifting, and twisting are uniformly noted as limited. Her fluctuating pain status is also documented. She is prescribed narcotic pain medication. Her physician regularly tests blood serum levels to document potential narcotic abuse. The tests are always within therapeutic levels. She is taking but not

3

abusing the medication; nonetheless, she is taking narcotic medication due to her unrelenting pain. The medical record from her treating physician indicate that her doctor has from time to time lowered Shenk's dosages of pain medications, generally in relation to decreased levels of stress or activity. *Id.* at 348, 350. Her regular visits to her doctor and her adherence to prescribed pain medication continued despite losing her health insurance coverage, as noted in an office visit on April 3, 2015. *Id.* at 375.

Her treating physician noted that for approximately one month in October 2014, claimant's mother temporarily moved into her house after suffering a stroke. The move increased the claimant's stress even though she was careful not to aggravate her lumbar disk disease. *Id.* at 363.

The treating physician also observed that the claimant traveled twice during 2015. *Id.* at 372, 380. According to doctor's notes, her March 2015 travels included a trip to California. *Id.* at 372. Her second trip was to Florida in August 2015 for the funeral of a relative. *Id.* at 380.

In January 2014, her treating physician completed a Family and Medical Leave Act ("FMLA") request. *Id.* at 384-395. The doctor checked the box stating that Shenk was "unable to perform any of [her] job functions due to the condition." *Id.* at 393. The same physician provided an opinion letter in February 2016 to claimant's attorney stating that claimant was disabled by her fibromyalgia, lumbar disk disease and post status carpal tunnel release. He opined that her fibromyalgia was the worst of her conditions and in combination with her lumbar disk syndrome could only be treated with minimally effective medication. *Id.* at 401-402. He opined that Shenk could not walk or stand for six hours a day and could not perform fine motor skills (grasping, handling, or fingering) for more than one third of the workday, and she would miss three or more days of work each month due

to her symptoms and potential side effects of her medication. *Id.* at 402. The doctor concluded that the claimant would be unable to perform full-time employment after March 31, 2014. *Id.*

A Social Security medical consultant was retained to provide a residual functional capacity ("RFC") in June 2014. The consultant reviewed the claimant's medical records, took the claimant's medical history, reviewed the medications and examined her. The consultant also ordered and reviewed x-rays in July 2014. *Id.* at 331-344.

The examination notes reported that cortisone shots in Shenk's left knee alleviate pain temporarily. *Id.* at 332. The consulting practitioner stated that claimant easily got on and off the exam table and sat comfortably in a chair during the duration of the history portion of the exam. *Id.* at 334. The motor strength examination indicated reduced grip strength in Shenk's right hand, and reduced bicep and triceps strength in the same arm. *Id.* at 336. The consulting doctor's entry stated that the examination was consistent with her diagnosis. *Id.* at 336-337. The doctor also indicated that the surgical release of carpal tunnel syndrome in her right hand was successful, though it may need to be repeated in the future. *Id.* at 336. The notes stated that the claimant had no irregularities in the movement of her fingers and had fine motor control. *Id.* at 336, 338. The consulting doctor added that the claimant would be able to perform jobs that give the option to sit or stand, but to avoid high stress situations. *Id.* at 337.

The ALJ asked claimant if she could perform a job that requires her to make appointments, sit near a telephone, take messages, answer customer questions, and schedule appointments. She responded that she probably could do that job but was not sure how long she would be able to do it or whether she could do it full time. Filing No. 12-2 at 66-67.

The medical consultant's Impression and Summary confirmed the claimant's past medical history and diagnosis of fibromyalgia, lumbar disk disease and post carpal tunnel release, among others. The consultant confirmed the claimant's opioid medications of Hydrocodone 10/325 PRN for pain, Tramadol 50mg up to three times a day and her anti-anxiety medication, Alprazolam 0.5mg daily. As to the fibromyalgia, the consultant found: "Physical examination today revealed tenderness in multiple areas consistent with fibromyalgia pain. This has limited the claimant's ability to lift and carry as well as to be active her in daily life and she also has fatigue in the afternoons which interfere with her ability to continue activities at that time." The examiner reported a limitation of sitting and standing for longer than 30 minutes, ability to handle objects most of the time with some decreased ability in the right hand, lift and carry ten pounds in each hand. Filing No. 12-7 at 337. The claimant can drive and is able to travel. *Id.* The consultant opined that the claimant would be able to perform as an employee in a position where she would be able to stand and sit presumably in less than thirty-minute cycles. The claimant also could not perform in high stress situations. *Id.*

Notably, the consultant also opined that the "claimant appears to be able to handle case benefits if awarded." *Id.*

A vocational expert ("VE") also testified at the hearing held in February 2016. The VE was asked to assume the claimant could perform light work as defined in DOT regulations. He testified that the hypothetical worker with these limitations could perform: light work; only occasional fingering, stooping, kneeling, crouching and crawling; no climbing ladders, scaffolds; and no exposure to hazards, sustained and concentrated temperatures, or vibrations. The hypothetical worker could not perform Shenk's relevant work history due to frequent fingering. Filing No. 12-2 at 72-73. He listed other jobs that the

hypothetical worker has the ability to perform: sedentary positions such as a tanning salon attendant, furniture rental clerk, and call out operator. *Id.* at 73-74. He also stated that the same worker would not have sustainable employment; missing three to four days of work per month. *Id.* at 80-81. The VE was not asked about the sitting and standing limitations outlined by the Social Security's consultant. He also was not asked to consider the claimant's medication or its effect on her functionality or employability.

The VE was asked on cross examination to assume the limitations outlined by the claimant's treating physician. The VE then opined that the claimant would not be able to sustain employment. *Id.* at 80.

The ALJ found that Shenk is not under a disability as defined in the Social Security Act. *Id.* at 31. The ALJ undertook the familiar five step sequential process for analyzing and determining disability. *Id.* at 21-31. The ALJ found that the claimant did not engage in substantial gainful activity since her alleged onset date, March 31, 2014. *Id.* at 23. The ALJ supported the findings that Shenk suffers from fibromyalgia, carpal tunnel syndrome, lumbar degenerative disc disease, migraines, and left knee degenerative joint disease and that these are severe impairments. *Id.*

The ALJ concluded that Shenk's impairments are not listed and do not medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.* at 24. The ALJ found that the claimant can perform sedentary work with occasional stooping, kneeling, and crawling so long as she does not climb ladders, has no exposure to hazards, concentrated hot or cold temperatures, or vibrations. *Id.* at 24-25.

In analyzing the claimant's ability to work, the ALJ noted that the claimant engages in socializing and other activities notwithstanding her disabling symptoms. *Id.* at 25-26. This

7

activity included caring for her mother and father in October 2014, traveling to California and Florida, maintaining a romantic relationship and performing household chores. *Id.*

The ALJ referred to claimant's statement at her hearing, where she said she could do sedentary work such as taking reservations. *Id.* at 26. The ALJ held that Shenk's admission of her ability to work, along with medical findings, are inconsistent and do not support Shenk's subjective complaints. *Id.* at 26-27.

The ALJ acknowledged that the claimant told the consulting doctor that she can perform some household chores, and that she has no difficulty driving. *Id.* at 27. The ALJ further noted that the consulting doctor observed no tenderness in the lumbar area, a straight spine, rapid finger movements, good fine motor control in hands, reduced grip consistent with recurring carpal tunnel syndrome and mildly reduced motor strength in the right arm biceps and triceps. *Id.* The ALJ determined that the consulting doctor examined x-rays of both the back and knee revealing only mild degenerative joint disease in the left knee with no swelling or joint effusion, and mild-moderate degenerative changes with a mild curvature of the lumbar spine. The ALJ also acknowledged the consulting doctor's opinion that the claimant is able to sit and stand for 30 minutes at a time and can handle objects most of the time, including lifting or carrying 10 pounds in each hand, but the claimant should avoid high stress situations that tend to trigger migraines. *Id.*

Further, the ALJ observed that the record lacked objective testing or clinical signs of limitations accounting for her migraine headaches and that Shenk testified to only experiencing these once per month. *Id.* The ALJ afforded some weight to the consulting doctor's opinion, to the extent it was consistent with his RFC findings and attributed any differences or discrepancies to the evidence that was unavailable to the consulting doctor. *Id.* The ALJ opined that the consultant based the migraine restrictions on subjective

8

complaints, and the ALJ determined that the complaints were not reliable enough to earn more than little weight. *Id.* at 28.

The ALJ supported the decision to discount subjective complaints by adding that other exam records from Shenk's treating physician supported this conclusion. *Id.* The ALJ cited to examination notes wherein the physician noted that the pain caused by claimant's fibromyalgia and degenerative disc disease were under "reasonable control" with medications. *Id.* The cited notes also indicated that the claimant's pain was under control, despite tender points consistent with the diagnosis, negative drawer and Lachman maneuvers with no signs of instability, and the claimant had normal gait and no swelling in extremities. *Id.* The ALJ also cited the July 2015 examination notes from the treating physician, which indicated that upon adjusting her diet to account for her gluten sensitivity, the claimant experienced a lot of improvement with her fibromyalgia related muscle pains, aches, and fatigue. *Id.*

The ALJ granted little weight to the treating physician's opinion because there is no evidence in these notes to support conclusions made by the doctor. *Id.* The ALJ attributed the discounting to a lack of objective evidence and conflicting testimony where Shenk claimed the ability to work a sedentary job, at least part-time. *Id.* The ALJ also noted that she testified that she performs many of the functions that the doctor claimed she was unable to perform, including sitting, standing, walking, handling, and grasping. *Id.* Further, the ALJ discounted the doctor's letter included in the record stating that his notes do not support the conclusory findings and limitations, pointing to the noted improvement in her condition in July 2015 and inconsistent testimony by the claimant during her hearing. *Id.* at 29.

The ALJ also discounted the treating physician's extreme limitations due to lack of notes or objective observation or measurements that would support the limitations. *Id.* at 28-29. The ALJ noted claimant's ability to perform frequent fingering after successful carpal tunnel surgery in 2001, and further indicated that she had not sought treatment related to carpal tunnel syndrome after the surgery and therefore discounted the treating doctor's fingering limitation and conclusion of disability. *Id.* at 29.

The ALJ afforded the consulting doctor's opinion some weight, which concluded that Shenk could engage in fingering "most of the time." *Id.* The ALJ discounted the consulting physician's limitation to occasional fingering because Shenk exhibited good fine motor movement and considered frequent fingering correct because she did not seek treatment for her hands and failed to mention the hand impairments in her initial application and upon reconsideration. *Id.* at 29-30.

The ALJ held that the claimant would be capable of performing past work because, according to the vocational expert's testimony, past work did not require demands past Shenk's RFC. *Id.* at 30. However, the ALJ noted that the VE stated if the RFC were limited to occasional fingering, she would be unable to perform relevant past work. *Id.* Finally, the ALJ held that the claimant's RFC allows for frequent fingering and that she can perform her relevant past work. *Id.* at 30-31. The ALJ found the claimant not disabled based on the fourth step in the sequential disability analysis and did not continue to analyze the final step. *Id.* at 30-31.

**Arguments**

Shenk argues that the ALJ's RFC assessment utilizes flawed factors concerning credibility; therefore, the assessment discounts issues that should have had an impact on Shenk's disability status. First, the claimant argues that the ALJ should have afforded the

treating doctor's opinions more weight. The claimant further contends that the ALJ failed to show substantial evidence of inconsistencies to warrant the weight the ALJ afforded to the treating doctor's opinions. Lastly, the claimant asserts that the ALJ should have given Shenk's subjective injuries greater weight. The claimant explains that the ALJ's legal errors led to material differences in the analysis of the RFC; therefore, affecting the outcome of the final decision.

## Law

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is "supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court cannot reverse a decision supported by substantial evidence, "if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citations omitted). The Court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it. *Finch v. Astrue,* 547 F.3d 933, 935. (8th Cir. 2008) (citations omitted). The Court determines whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000) (citations omitted).

The Commissioner performs a five-step sequential analysis described in the Social Security Regulations to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner evaluates "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R.

11

Pt. 404, Subpart P, App. 1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue*, 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue*, 607 F.3d 533, 536-37 (8th Cir. 2010). The claimant bears the burden of showing that she is disabled. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). Once the analysis reaches the fifth and final step, however, the burden shifts to the Commissioner to show that there are other jobs in the national economy that the claimant can perform consistent with her RFC. *Id.* The regulations provide that if the Social Security Administration ("SSA") finds that a claimant is disabled or not disabled at a step, the SSA makes its decision and does not go on to the next step. 20 C.F.R. § 404.1520(a)(4).

In the fourth step of the sequential analysis, the ALJ considers whether a claimant's impairments keep her from doing past relevant work. 20 C.F.R. §404.1520(e). A claimant's RFC is the most that one can do despite his/her limitations. 20 C.F.R. § 404.1545. The claimant is not disabled if the claimant retains the RFC to perform: 1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). It is the claimant's burden to prove the claimant's RFC limits claimant's ability to perform past relevant employment. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). A claimant's RFC is a medical question. Therefore, the ALJ should consider "[s]ome medical evidence . . . that addresses the claimant's ability to function in the workplace." *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citations and quotation marks omitted). The ALJ assesses the RFC "based on all relevant evidence." *Id.* (citation omitted).

The ALJ considers objective medical evidence during this analysis as one factor in the final decision. *Id.* The ALJ often gives a claimant's treating physician controlling weight; however, a treating source is not automatically entitled to controlling weight. *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). The ALJ may "justifiably discount" a treating opinion when it is "inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (citation and quotation marks omitted). The treating source's opinion is only due controlling weight if the doctor's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (citations omitted). The ALJ must provide good reasons for the weight given to the treating source's opinion. C.F.R. § 404.1527(c)(2). A medical opinion requires consistency with other objective medical evidence in order to be deemed controlling. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

Thus, the ALJ is not limited to medical evidence and must consider some supporting evidence from a professional. *Id.* (citations omitted). During this step, an ALJ may consider a vocational expert's testimony at step four of the evaluation process. *Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007).

The ALJ must make explicit findings as to the physical and mental demands of the claimant's past relevant work and compare that with what the claimant is capable of doing before determining whether the claimant is able to perform her past relevant work. *Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991) (quotations omitted). If an ALJ fails to make necessary findings, the Court must reverse unless the claimant suffered no prejudice, for example, a reversal is unnecessary if the record contains substantial evidence that the

claimant can perform past work. *See*, e.g., *Battles v. Sullivan*, 902 F.2d 657, 659-660 (8th Cir. 1990).

The ALJ must evaluate the claimant's credibility prior to determining the claimant's RFC. *Wagner*, 499 F.3d at 851. The absence of an objective medical basis, which supports the severity of subjective complaints, is just one factor to be considered in evaluating the claimant's credibility of testimony and complaints. *Id.* The ALJ must consider all evidence relating to subjective complaints. *Id.* The ALJ reviews evidence including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of symptoms; 3) aggravating factors; 4) dosage, side effects, and effectiveness of medications; and 5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

## Opinion

The Court has carefully reviewed the record and finds that the ALJ's denial of benefits should be reversed. In this case, the ALJ improperly discounted the claimant's subjective complaints where they were "inconsistent" with her daily functioning and objective medical findings. The ALJ did not properly assess the weight of the treating physician or the consulting physician's opinions instead, asserted his own medically unsupported findings.

The ALJ opined that the lack of objective medical finding within the treatment notes of the claimant's treating doctor and inconsistencies with the ALJ's observation of the claimant and her testimony left him without basis for the claimed disability. The ALJ then fashioned a RFC inconsistent with the treating physician and, in part, the consulting physician. With respect to the consulting physician's disability finding the ALJ found "to the

14

extent this opinion differs from the residual functional capacity, this variation is attributable to additional evidence (including testimony) at the hearing that was not available to [the consulting physician]." *See* Filing No. 12-2 at 27.

Apparently, the ALJ had better diagnostic ability than both the treating and consulting physicians. The medical record, the treating physician, and the consulting physician provide the medical evidence necessary for the ALJ to determine whether the claimant is disabled.

The ALJ noted inconsistencies in the medical record and the claimant's testimony to undermine the credibility of the claimant, the treating and consulting physicians. However, the ALJ cited little evidence from the record supporting the claimant's condition, including the claimant's testimony of her subjective complaints of disabling pain and extremely limited physical movement. The ALJ discounted the credibility of the treating physician and, in part, the credibility of the consulting physician because the claimant was able to travel across the country for two trips, could get groceries, drive to the hearing, and perform limited daily acts of living. The record does not document how long the claimant was able to sit during her trips, how frequently she takes breaks during activities of daily living, or how frequently she could perform any of these activities. The claimant's ability to consistently work or perform the work activities decided by the ALJ were not supported by either the treating or consulting physicians, the medical record nor the claimant's supposed inconsistent testimony.

The ALJ must account for the limited physical movement and limited ability to carry on with her daily chores and normal socialization. Shenk had several medical treatments including restricting her diet, pain management shots, as well as prescriptions for narcotic and anxiety medications meant to help with her chronic pain. She noted very little change in

her pain as a result of the attempted treatment. Considering the treating physician and the consulting physicians' opinions, the Court finds that her disabilities include fibromyalgia, carpal tunnel syndrome, lumbar degenerative disc disease, migraines, temporomandibular joint dysfunction, left knee degenerative joint disease and that these disabilities are severe impairments. This Court also finds that Shenk is incapable of engaging in substantial gainful activity, including part-time work. These limitations speak to her status as disabled. Under the circumstances, the Court finds substantial evidence in the record is inconsistent with the ALJ's finding that Shenk is not disabled and the ALJ's decision should be reversed.

## Conclusion

In sum, while reversal and remand for an immediate award of benefits is only appropriate where the record overwhelmingly supports a finding of disability, the Court finds that "the clear weight of the evidence fully supports a determination [Shenk] is disabled within the meaning of the Social Security Act." See *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). More importantly, the Eighth Circuit has repeatedly approved of immediately awarding benefits based upon the controlling weight of a claimant's treating medical provider. *See, id.*; *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003); *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *cf. Papesh v. Colvin*, 786 F.3d 1126, 1135-36 (8th Cir. 2015). And where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate. *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001).

Accordingly,

IT IS ORDERED THAT:

1. The plaintiff's motion to reverse, Filing No. 16, is granted;

2. The defendant's motion to affirm, Filing No. 19, is denied;

3. The decision of the Commissioner of the Social Security Administration is reversed;

4. This action is remanded to the Social Security Administration for an award of benefits.

Dated this 26th day of September, 2018.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge